## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

TANYANEAKA TANESHA LEWIS,

　　　　　　　　　　　　Plaintiff,

　　vs.


FIRST ADVANTAGE BACKGROUND
SERVICES CORP.

　　　　　　　　　　　　Defendant.

Civil Action No.: 23-49


**COMPLAINT AND DEMAND FOR
JURY TRIAL**

Tanyaneaka Tanesha Lewis ("Plaintiff" or "Ms. Lewis") by and through her counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted ***felon*** and serial theft offender.

### <u>INTRODUCTION</u>

1.　　This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.　　Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of multiple counts of felony and misdemeanor theft.  Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff has never been arrested for, charged with, or convicted of a felony in her life.

5.      Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor and felony convictions, which do not belong to Plaintiff.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Travis County, Texas regarding the felony and misdemeanor convictions prior to publishing the inaccurate information in Plaintiff's report and selling it to her prospective employer.

7.      Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their first and middle name and date of birth.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a promising job and job security.

11.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

13.    Plaintiff Tanyaneaka Tanesha Lewis is a natural person residing in Killeen, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.    Defendant First Advantage is a Florida corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328.

15.    Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.  These reports are provided in connection with a business transaction initiated by the employer.

16.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment

purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1]     CFPB,     Market     Snapshot:     Background     Screening     Reports     (Oct.     2019), https://fiels.consumerfinance.gov/f/documents/201909_cfpb_market-snapsho-background-screening_report.pdf ("CFPB Report").
[2]     IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to Plaintiff's sister, who has a different first and middle name and date of birth than Plaintiff.

39.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with TPUSA Inc.

40.     In or around the second week of November 2022, Plaintiff applied for full-time and fully remote employment with TPUSA Inc. ("TPUSA").

41.     Upon applying to TPUSA, Plaintiff successfully completed an interview.

42.     During the interview, Plaintiff was offered the position with TPUSA and was set to begin work on December 5, 2022.

43.     A condition of employment with TPUSA, was for Plaintiff to successfully pass a background check. Plaintiff was confident that there would be no issues with her background check and accordingly, Plaintiff authorized a background check.

44.     Plaintiff was also required to schedule a drug test, which she did, set for November 16, 2022. Ultimately, Plaintiff was denied employment prior to the scheduled date.

**Defendant Published an Inaccurate Background Check Report to TPUSA Inc.**

45.     TPUSA contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46.     On or about November 11, 2022, TPUSA ordered a criminal background check on Plaintiff from Defendant.

47.     On or about November 14, 2022, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to TPSUA.

48.     Within that employment report, Defendant published inaccurate information about Plaintiff.

/ /

/ /

49.     Specifically, Defendant's employment report about Plaintiff included four grossly inaccurate and stigmatizing misdemeanor and felony theft convictions from Travis County, Texas, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | D-1-DC-17-200823 |
| Case Date | 02/Feb/2017 |
| Name on File | LYDREA CHANTAL LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT - PROPERTY LESS THAN less than $2,500 2/MORE PREVIOUS CONVICTION |
| Charge Type | FELONY |
| Disposition | CONVICTED |
| Disposition Date | 02/Oct/2018 |
| Sentence | JAIL 12 MONTHS |

| | |
|---|---|
| Case Reference # | 2C1700682 |
| Case Date | 19/Dec/2016 |
| Name on File | LYDREA CHANTAL LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT - PROPERTY GREATER THAN greater than or equal to $100 LESS THAN less than $750 |
| Charge Type | MISDEMEANOR |
| Disposition | CONVICTED |
| Disposition Date | 11/Oct/2019 |
| Sentence | FINE 100; COURT COSTS 239; JAIL 30 DAYS |

**Please Note:** This Record is the same case reported in the following:

Statewide Criminal - Texas Department Of Public Safety

| | |
|---|---|
| Case Reference # | 18-0027-K26 |
| Case Date | 02/Jan/2018 |
| Name on File | LYDREA CHANTAL LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT - PROPERTY LESS THAN less than $2,500 2/MORE PREVIOUS CONVICTION |
| Charge Type | FELONY |
| Disposition | CONVICTED |
| Disposition Date | 22/Jan/2019 |
| Sentence | JAIL 12 MONTHS; COURT COSTS 224 |

| | |
|---|---|
| Case Reference # | 17-2344-K26 |
| Case Date | 25/Nov/2017 |
| Name on File | LYDREA CHANTAL LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT - PROPERTY LESS THAN less than $2,500 2/MORE PREVIOUS CONVICTION |
| Charge Type | FELONY |
| Disposition | CONVICTED |
| Disposition Date | 22/Jan/2019 |
| Sentence | JAIL 12 MONTHS; COURT COSTS 324 |

50.    While Plaintiff does have a single misdemeanor "Theft" conviction the criminal convictions identified above (Case Nos. D-1-DC-17-200823, 2C1700682, 18-0027-K26, and 17-2344-K26) *do not* belong to Plaintiff.

51.    Plaintiff has never been arrested for, charged with, or convicted of a felony offense in her life.

52.    A cursory review of the widely available underlying public court records confirms that the records belong to Plaintiff's sister, *Lydrea Chantal* Lewis ("Convicted Felon Lewis").

53.    Had Defendant actually consulted or obtained the widely available underlying public court records regarding the four convictions, it would have seen obvious discrepancies between Convicted Felon Lewis and Plaintiff.

54.    The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Lewis include the following:

(a)    Plaintiff's legal name is "*Tanyaneaka Tanesha* Lewis" and the criminal records belong to a "*Lydrea Chantal* Lewis," which is both clearly indicated on the face of the employment report and in the widely available public records from Travis County, Texas. Neither the first name nor middle name match between Plaintiff and the true owner of the records in question nor are the first and middle names *remotely* similar;

(b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is in February 1974, yet the underlying public court records indicate that Convicted Felon Lewis's date of birth is in April 1975 – this is *not* Plaintiff's date of birth; and,

(c)    Plaintiff's Social Security number, which Plaintiff provided to Defendant alongside her other personal identifiers, is entirely different than that of Convicted Felon Lewis.

55.    The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

56.    Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different first and middle name than Plaintiff, a different date of birth, and a different Social Security Number.

57.    In fact, the only information the two have in common is the last name and gender. And "Lewis," is far from an uncommon last name.

58.    Furthermore, Defendant reported Plaintiff's single misdemeanor "Theft" conviction (Case No. 2C1700681) *twice* on Plaintiff's background report, once in the "Statewide Criminal- Texas Department of Public Safety" subsection and once in the "Felony Including Misdemeanor Or Other Killeen, Bell, TX" subsection.

//

//

59.    Specifically, the records appeared as follows:

| | |
|---|---|
| Case Reference # | 2C1700681 |
| Case Date | 19/Dec/2016 |
| Name on File | TANYANEAKA TANESHA LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT - PROPERTY GREATER THAN greater than or equal to $100 LESS THAN less than $750 |
| Charge Type | MISDEMEANOR |
| Disposition | CONVICTED |
| Disposition Date | 20/Sep/2018 |
| Sentence | FINE 700; COURT COSTS 287; JAIL 3 DAYS |
| **Please Note:** This Record is the same case reported in the following: | |
| Felony Including Misdemeanor Or Other KILLEEN, BELL, TX | |
| Statewide Criminal - Texas Department Of Public Safety | |

and

| | |
|---|---|
| Case Reference # | MR2C1700681 |
| Case Date | 30/Jan/2017 |
| Name on File | TANYANEAKA TANESHA LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | THEFT OF PROPERTY greater than or equal to $100less than $750 |
| Charge Type | MISDEMEANOR |
| Disposition | CONVICTED |
| Disposition Date | 20/Sep/2018 |
| Sentence | FINE 700; COURT COSTS 239; JAIL 3 DAYS |
| **Please Note:** This Record is the same case reported in the following: | |
| Statewide Criminal - Texas Department Of Public Safety | |

60.    Defendant's reporting was inaccurate and/or materially misleading as it indicated Plaintiff was convicted of two misdemeanor theft charges on September 20, 2018 (she was not).

61.    Defendant also inaccurately reported the case number and case date, further making it appear as though Plaintiff's one misdemeanor was two separate convictions.

62.    Specifically, in the "Statewide Criminal" subsection, Defendant reported that the case number was "2C1700681" and had a case date of December 19, 2016.

63.    However, in the "Felony Including Misdemeanor" subsection, Defendant reported that the case number was "MR2C1700681" and had a case date of January 30, 2017.

64.    Additionally, Defendant reported two different amounts for the court costs in the "sentence" field of the records.

65.    A cursory review of the widely available underlying public court records confirms that the case number is MR2C1700681, that Plaintiff was arrested on December 19, 2016, and that the case was filed on January 30, 2017.

66.    Had Defendant actually consulted or obtained the widely available underlying public court records regarding Plaintiff's actual criminal history, it would have seen obvious discrepancies between the actual court records and what Defendant reported.

67.    The sole Defendant failed to accurately report Plaintiff's own criminal record was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

68.    Had Defendant followed reasonable procedures, it would have discovered that it inaccurately reported Plaintiff's own criminal record twice within her report.

69.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was of maximum possibly accuracy, in violation of 15 U.S.C. § 1681e(b).

**TPUSA Denies Plaintiff's Job Application and Plaintiff Disputes the Misinformation in Defendant's Employment Report**

70.    On or about November 14, 2022, Plaintiff received a pre-adverse action notice from TPUSA, which informed Plaintiff that "Information [TPUSA] received in a Consumer Report obtained from First Advantage [] may adversely affect your employment status with TPUSA Inc."

71.    The pre-adverse action notice informed Plaintiff that she may provide TPUSA with additional information within 5 business days, but that otherwise TPUSA will make a determination based on the information they already possessed.

72.    The pre-adverse action notice also included a copy of the consumer report First Advantage sold to TPUSA concerning Plaintiff.

73.    Plaintiff was shocked and humiliated upon reviewing her employment report and realizing that the serious criminal convictions of her sister were published in the employment report Defendant sold about Plaintiff to TPUSA.

74.    That same day, Plaintiff also received an email from TPUSA emailed Plaintiff and stated "Unfortunately we will need to withdraw you from this job opportunity due to the background check."

75.    Plaintiff responded to TPUSA and let it know that she was working to correct her report because the information was inaccurate.

76.    Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Lewis's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on her future.

77.    Specifically, Defendant matched Plaintiff and Convicted Felon Lewis and published the criminal records of Convicted Felon Lewis onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record

information was widely available to Defendant prior to publishing Plaintiff's employment report to TPUSA, but Defendant failed to perform even a cursory review of such information.

78.     On or about November 14, 2022, desperate to save her employment opportunity with TPUSA and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant via telephone.

79.     Plaintiff identified herself and provided information to Defendant to support her dispute.

80.     Plaintiff specifically disputed the criminal records of Convicted Felon Lewis.

81.     Plaintiff specifically stated that Convicted Felon Lewis is Plaintiff's sister and that the criminal records of Convicted Felon Lewis do not belong to Plaintiff.

82.     Plaintiff also disputed Defendant's inaccurately reported of her own criminal record and informed Defendant that she only has one misdemeanor theft conviction.

83.     Plaintiff specifically asked Defendant to investigate and delete all criminal records except her one misdemeanor conviction from any employment report about Plaintiff.

84.     Plaintiff desperately hoped Defendant's investigation would be completed quickly, as she feared TPUSA would not wait long before its decision was final.

85.     Plaintiff nervously waited for a communication from Defendant and, receiving none, called Defendant again on or about November 16, 2022 to inquire as to the status of Defendant's investigation.

86.     Plaintiff was informed by the First Advantage representative she spoke to that Defendant had not yet completed their investigation, and that she had to wait up to 30 days for the results.

87.    Unfortunately, on or about November 21, 2022, Plaintiff received a letter from TPUSA informing Plaintiff that TPUSA would not move forward with her application for employment.

88.    TPUSA specified that its decision "was based in whole or in part on information about you contained in a Consumer Report received from First Advantage."

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

89.    On January 19, 2023, approximately two months after Plaintiff's dispute, Plaintiff received Defendant's correspondence.

90.    The envelope was stamped January 11, 2023.

91.    The report itself indicated that it was last revised on November 15, 2022.

92.    It is unclear why Defendant waited nearly two months after revising her report to mail Plaintiff her dispute response and revised report.

93.    Upon review of the revised report, Plaintiff observed that it was only partially corrected.

94.    Defendant removed the criminal records of Convicted Felon Lewis from the subject employment report.

95.    However, Defendant did not correct its reporting of Plaintiff's own criminal record and continued to report Plaintiff's *one* misdemeanor conviction as *two* separate convictions.

96.    Regardless, Plaintiff's employment opportunity with TPUSA had already been lost.

97.    Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, TPUSA formed a negative opinion about Plaintiff and/or moved on to other candidates.

98.    Defendant's false report cost Plaintiff a promising job with TPUSA.

99.     The position with TPUSA was full-time and Plaintiff was set to earn $14.50 per hour. Most importantly to Plaintiff, however, the position was fully remote. Plaintiff very much desired a full-time work from home position.

100.    Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued desire to seek employment, Plaintiff continues to be unemployed.

101.    Plaintiff is fearful that with each application she submits, that the inaccurate reporting will reappear and cause additional job denials.

102.    Plaintiff has also refrained from applying for certain companies where she knows someone who there because she does not want to face additional embarrassment and humiliation if the inaccurate reporting reappears.

103.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

104.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; financial instability; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

106.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

107.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

108.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

109.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

110.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; financial instability; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

111.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

112.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

114.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

115.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

116.    A CRA must notify a consumer in writing of the results of its reinvestigation not later than 5 business days after the completion of the reinvestigation. *See* 15 U.S.C. § 1681i(a)(6)(A).

117.    On at least one occasion during 2022, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that she has been convicted of multiple theft offenses.

118.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

119.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

120.    Further, Defendant violated 15 U.S.C. § 1681i by failing to notify Plaintiff of the results of its reinvestigation "not later than 5 business days after the completion of the reinvestigation."

121.    Defendant revised Plaintiff's report on November 15, 2022. However, it was not until January 11, 2023 that Defendant mailed Plaintiff a copy of the results of its investigation, nearly two months after Defendant revised Plaintiff's report.

122.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; financial instability; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

123.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in

an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

124.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: January 26, 2023,

*/s/ David A. Chami*
David A. Chami, AZ No. 027585
**The Consumer Justice Law Firm**
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2359
Email: dchami@cjl.law

*Attorneys for Plaintiff*
*Tanyaneaka Lewis*